Argued March 20, affirmed April 10, rehearing denied June 12, 1928.

## ISAAC E. STAPLES *v.* H. D. BUTLER ET AL.

(266 Pac. 245.)

**Equity — In Suit to Foreclose Sheriff's Deed, Equity Court Could Settle Controversy Between Owner and Intervener Relative to Former's Agreement to Deed Part of Land to Latter.**

1. In suit to foreclose a sheriff's deed as a mortgage, court of equity, having parties, pleadings and testimony before it, could settle controversy between owner and intervener relative to owner's agreement, prior to purchase, to deed to intervener certain lots which intervener claimed were improperly included in the mortgage under which owner purchased, where intervener had consented to the sale under which owner purchased only on condition such lots would be quitclaimed by purchaser.

**Mortgages—Purchaser at Mortgage Sale Could not Question Validity of Prior Agreement to Quitclaim Certain Property to Mortgagor.**

2. Purchaser at a mortgage sale could not subsequently question the validity of a written agreement entered into by him prior to his purchase to quitclaim part of the property to one mortgagor who contended that such property was wrongfully included in the mortgage on the technical ground that the property was embraced in the mortgage.

---

Mortgages, 42 **C. J.,** p. 155, n. 95.

From Douglas: JAMES W. HAMILTON, Judge.

Department 2.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief and oral argument by *Mr. Albert Abraham.*

For respondent W. P. Reed there was a brief over the name of *Messrs. Rice & Orcutt,* with an oral argument by *Mr. Dexter Rice.*

For respondent Isaac E. Staples there was a brief over the name of *Mr. J. O. Watson.*

BEAN, J.—This is a suit to foreclose a sheriff's deed as a mortgage. From a decree in favor of W. P. Reed, defendant and cross-complainant, as to certain lots and against the other defendants, the defendants, except W. P. Reed, appeal.

The history of the case is about as follows: On July 10, 1920, the Reedsport Fish Company was an Oregon corporation conducting business at Reedsport in Douglas County, Oregon. W. P. Reed, the respondent, was president of the company. Isaac E. Staples resided in Portland and was engaged in business in that city and also engaged in the banking business, being connected with the First Bank of Reedsport, and his son, George Staples, was cashier of said bank and resided in Reedsport.

At that time the Reedsport Fish Company was the owner of lots 3 and 4, in block 47, of Railroad Addition to the town of Reedsport, and was also the owner of a number of fishing boats and other fishing equipment; and W. P. Reed owned lots 1 and 2 in block 47, of Railroad Addition to the town of Reeds-

port. Said lots adjoined the property of the Reedsport Fish Company and Mr. Reed permitted the company to make use of his lots as a means of ingress and egress to and from its property.

On the above date the Reedsport Fish Company was indebted to the First Bank of Reedsport in a considerable sum and desired further time and additional money, the aggregate amount of which would exceed the loan permitted by law to be made by the bank. Mr. Isaac E. Staples at that time visited Reedsport, and an arrangement was made by which the Reedsport Fish Company executed and delivered to him two promissory notes; one for $2,500, payable 90 days after date, and one for $5,000, payable on or before December 1, 1920, Staples then requiring W. P. Reed to sign both notes personally with the Reedsport Fish Company. Both notes were secured by mortgage to Isaac E. Staples, executed by the Reedsport Fish Company, by its president and secretary, which said mortgage covered lots 3 and 4 in block 47 of Railroad Addition to Reedsport, and also 15 Columbia River type, gasoline power fish boats.

At the time of executing said mortgage, the respondent Reed, as he had signed the notes, also signed the mortgage. This mortgage was delivered to Mr. Isaac E. Staples, who in turn indorsed the $5,000 note over to the First Bank of Reedsport, and assigned to it a *pro tanto* interest in the aforesaid mortgage. At the time the notes and mortgage were signed by the officers of Reedsport Fish Company, Mr. Isaac E. Staples was present. The mortgage was duly witnessed by two witnesses and acknowledged before a notary public.

Mr. Staples immediately thereafter returned to his home in Portland and after his arrival there con-

cluded that lots 1 and 2 of block 47 should also be included in the mortgage, and telephoned his son George Staples at the Reedsport Bank to have lots 1 and 2 included in the mortgage. George Staples upon receipt of this communication from his father interlined in the mortgage with a pen "lots 1 and 2"; then, as he states, he set out to find Reed, whom he finally located about 10 o'clock that night at a dance, and told him that he had interlined lots 1 and 2 and asked him to initial the margin of the page opposite the interlineation, which Reed did. Mr. Reed claims that he had no recollection of this; that he never understood that his individual property was incorporated in the mortgage. There was no other or further witnessing or acknowledgment of the instrument and W. P. Reed's wife did not sign the same.

On June 18, 1921, Isaac E. Staples and the First Bank of Reedsport commenced suit against the Reedsport Fish Company, W. P. Reed et al., for the foreclosure of the aforesaid mortgage. Mr. Reed claims that this was the first knowledge he had of the fact that his lots were included in the mortgage. He protested to Mr. Staples and indicated he would appear in the case for the purpose of correcting the mortgage. Mr. Isaac E. Staples requested him not to do so for fear complications might arise over the execution of the mortgage by the fishing company, and promised Reed if he would not interfere in the litigation that he would personally guarantee that Reed's lots should be reconveyed to him. For this reason, as Reed claims, he took no action in the matter. The foreclosure decree was entered. The property was directed to be sold, execution issued on the decree and the property advertised for sale by the sheriff.

At the time it was advertised for the sale Mr. Isaac E. Staples came from Portland to Roseburg for the purpose of bidding in the property, and met Mr. H. D. Butler and Clyde Chase, two of the defendants, who proposed to buy the property of Mr. Staples, after he had bid it in. It was arranged between Staples and Butler that Butler would buy all the property at the foreclosure sale and Staples would finance him, by taking his note for a portion of the amount secured by an assignment of the sheriff's certificate of sale, which note Mr. Staples expected the Northwestern National Bank of Portland, Oregon, to carry for him.

Before the deal between Staples and Butler was closed, or the note executed, or the assignment of certificate, Mr. Staples informed Butler in regard to lots 1 and 2 of block 47 having been improperly included in the mortgage and of his agreement to protect Mr. Reed and convey the lots to him; and took from Butler memorandum in writing as follows:

"H. D. Butler agrees to quitclaim lots 1 and 2 of Block 47 to W. P. Reed or any person whom Reed wishes said lots quitclaimed to.
"November 26, 1921.
                         "(Signed) H. D. BUTLER.
"Witness: I. E. STAPLES,
            "CLYDE CHASE."

Butler bid in both the real and personal property at the sale for $8,979, the amount of the judgment, and thereafter executed his note for a portion of the amount and assigned the sheriff's certificate of sale to the Northwestern National Bank. The latter bank declined to carry the amount and reassigned the certificate of sale and note to Mr. Staples. Thereafter Mr. Reed demanded a reconveyance of the lots

from Butler and took the matter up with Mr. Isaac E. Staples, with the result that a formal agreement, introduced in evidence, was on May 3, 1922, entered into between H. D. Butler and his wife, and W. P. Reed. This agreement, after reciting in substance that said lots 1 and 2 had been sold at execution sale and bid in by Butler; that said lots were improperly included in the mortgage, and that it had been agreed at the date of sale that said lots should he released and quitclaimed to Reed; and that the substance concerning the erroneous incorporation of said lots was understood by all the parties concerned and interested therein; that in consideration of the premises and one dollar paid, Butler and his wife agreed "to sell, convey and quitclaim said lots" to W. P. Reed at such time as title to said property should vest in Butler. There was a further consideration in this agreement that Butler should have the privilege of crossing over the river side of said lots until such time as permanent improvements should be erected thereon. This formal agreement was signed and sealed by the parties, witnessed by two witnesses, duly acknowledged on September 6, 1922, and thereafter duly recorded.

Thereafter the property was conveyed by the sheriff to Isaac E. Staples, pursuant to the assigned certificate as security. Staples brought the present suit against H. D. Butler and the other defendants to foreclose the sheriff's deed as a mortgage. W. P. Reed was not made a party to this suit until he intervened. He filed an answer and cross-complaint, setting up his ownership of lots 1 and 2; the facts in connection with their inclusion within the original mortgage; the agreement made by the plaintiff and the defendant Butler and wife to reconvey the same

to him, and prayed for a decree that he was the owner; and that a good and sufficient deed be executed reconveying said lots to him and barring the other defendants of any right thereto.

The answer of the other defendants to the cross-complaint denied Reed's present ownership of said lots or that they were erroneously included in the mortgage; and also denied that Butler knew of such inclusion or agreed that said lots should be released from said sale.

The defendants admitted that Butler and his wife executed the contract mentioned, but alleged that the contract was procured by misrepresentations of said Reed. The new matter contained in the answer of defendants was put in issue by a reply filed by Reed.

The testimony indicated and the court found that all the defendants had knowledge of the agreement that the lots should be released from the original mortgage, and entered a decree to the effect that Reed was the owner of the lots and that a deed should be executed by defendants, Butler and wife, conveying the title to Reed; that the interest of the other defendants in the lots be foreclosed.

1. After the commencement of the present suit Butler and his associates paid the amount due plaintiff. This cause has simmered down through the various ramifications to a controversy between Butler and Reed. It is contended in behalf of the defendants, other than Reed, that the relief granted by the trial court was not based upon proper issues. This is a suit in equity. All the persons interested were regularly made parties to the suit; all of the matters which we have mentioned, and in much greater detail, were fully set forth in the pleadings. The formal agreement between Butler and Reed is set out *in*

*haec verba* in the cross-complaint and we think it is entirely proper for the Court of Chancery, having the parties, pleadings and testimony all before it, to settle the controversy: *Bliss* v. *Miller,* 119 Or. 573 (250 Pac 218, 763).

Plainly stated for all practical purposes, I. E. Staples sold the property described in the mortgage which had been foreclosed, excepting lots 1 and 2 which are in dispute, to H. D. Butler for the amount due on the foreclosure decree. The form in which the transaction was had is not so material. Butler obtained all the property that he purchased of Staples.

I. E. Staples informed Butler that lots 1 and 2 were to go to W. P. Reed. According to the testimony on behalf of Butler he was fully informed of this matter before the transaction was completed and before the parties proceeded to the law office of Mr. Neuner for the purpose of having the necessary papers drafted, and while there was opportunity for him to withdraw from the deal, had he cared to do so. Mr. Butler signed a written agreement in the presence of witnesses to carry out the agreement of I. E. Staples and quitclaim these lots to Reed. Afterward Butler and his wife, for a valuable consideration, executed a formal agreement and both acknowledged the same and it was duly delivered.

2. There is some difference in the testimony as to when Butler was informed of the exception of lots 1 and 2 from the deal, apparently owing to memory. We fail to see that it makes any material difference. The valid written agreement of Butler and wife should not be cast aside by reason of the oral evidence in the case. The written instrument mentioned has in no way been invalidated by the testimony. The equities are with the defendant W. P. Reed. It is too

late for Butler to question the validity of his fair agreement by a mere technical claim that the lots were formerly legally embraced in the mortgage. The contract of Butler and wife to quitclaim the lots in suit should be enforced as decreed by the trial court. Such decree is supported by the pleadings and testimony.

It is claimed that Isaac E. Staples agreed when he was paid, and the property was redeemed on behalf of Butler, to dismiss this suit. That would mean as far as plaintiff is concerned. Plaintiff claims nothing further in this suit. Staples could not dismiss the answer and cross-complaint of defendant W. P. Reed.

It was competent and proper for Reed and Butler at the instance of Staples to settle the matter. The whole controversy was fairly and equitably adjusted, as shown by the formal contract between Butler and wife and W. P. Reed, which the Circuit Court decreed should be performed.

We find no legal question which demands a discussion. The decree of the trial court is affirmed.

AFFIRMED. REHEARING DENIED.

RAND, C. J., and BROWN and BELT, JJ., concur.